UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------

DAVID DICARLO,

                                        Plaintiff,

            -against-

FLUSHING FINANCIAL CORPORATION,

                                        Defendant.

----------------------------------------------------------

Civil Action No. _____

[Supreme Court of the State of New York, County of New York, Index No. 155637/2019]

**NOTICE OF REMOVAL OF
FLUSHING FINANCIAL CORPORATION**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, *et seq.*, defendant Flushing Financial Corporation ("Defendant" or "Flushing"), by and through its attorneys, Hughes Hubbard and Reed LLP, hereby files this Notice of Removal to this Court of the above-captioned action, originally filed in the Supreme Court of the State of New York, New York County. In support of removal, Flushing respectfully states the following:

**TIMELINESS OF REMOVAL**

1.      On June 5, 2019, Plaintiff  David DiCarlo, ("Plaintiff") filed a complaint (the "Complaint") entitled *DiCarlo v. Flushing Financial Corp.,* Index No. 155637/2019, in the Supreme Court of the State of New York, County of New York (the "State Court Action"), naming Flushing as the defendant.

2.      Flushing, by and through its attorneys, accepted service of the Complaint on June 17, 2019.

3.      Pursuant to 28 U.S.C. § 1446(a), copies of the Summons and the Complaint and e-mail correspondence reflecting acceptance of service of the Complaint are attached hereto as **Exhibit 1**. There have been no other filings in this case to date.

4.      In the State Court Action, Plaintiff has alleged, on behalf of himself and a purported class of plaintiffs, that Defendant has violated various federal and state statutes by allegedly failing to provide full and equal access to its website to persons who are blind.  The Complaint alleges violation of a federal statute, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq*. (the "ADA Claim").  The Complaint also asserts claims under New York state and city law, including New York State Human Rights Law, New York State Civil Rights Law and New York City Human Rights Law.

5.      Any civil action is removable if the plaintiff could have originally brought the action in federal court. *See* 28 U.S.C. § 1441(a).  Under 28 U.S.C. § 1331 this Court has original federal question jurisdiction over Plaintiff's ADA Claim.  Accordingly, pursuant to 28 U.S.C. § 1441(a), Defendant has the right to remove the State Court Action to this Court, without regard to the citizenship or residency of the parties or the amount in controversy.

6.      Defendant accepted service of the Complaint on June 17, 2019.  This removal is therefore timely pursuant to 28 U.S.C. § 1446(b).

7.      By this Notice of Removal, Defendant does not waive any applicable defense, jurisdictional or otherwise, which it may possess; admit to any wrongdoing or to the allegations contained in the Complaint; or concede that Plaintiff has stated a claim against it.

8.      Defendant will promptly serve copies of this Notice of Removal upon Plaintiff and file a copy with the Clerk of the Supreme Court of the State of New York, County of New York, to effect removal of this action to the United States District Court pursuant to 28 U.S.C. § 1446(d).

**WHEREFORE**, Flushing respectfully requests that this Court take jurisdiction of this action and issue all necessary orders and processes to remove said action from the Supreme

Court of the State of New York, County of New York, to the United States District Court for the

Southern District of New York.

DATED:     New York, New York
           June 20, 2019

                    Respectfully submitted,

                    HUGHES HUBBARD & REED LLP

                    By:     */s/ Ned H. Bassen*
                              Ned H. Bassen
                              Amina Hassan
                              One Battery Park Plaza
                              New York, New York 10004-1482
                              (212) 837-6000
                              ned.bassen@hugheshubbard.com
                              amina.hassan@hugheshubbard.com

                              *Attorneys for Defendant Flushing Financial Corporation*

# Exhibit 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**NEW YORK COUNTY**
_____

DAVID DICARLO, *on behalf of himself and*
*all others similarly situated,*

       Plaintiff,

       v.

       Index No.:

       **SUMMONS**

FLUSHING FINANCIAL CORPORATION ,

       Defendant.
_____

To the above named Defendant:

FLUSHING FINANCIAL CORPORATION
c/o THE CORPORATION TRUST COMPANY
CORPORATION TRUST CENTER 1209 ORANGE ST
WILMINGTON, DE 19801


     You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with the summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

     The basis of venue is Plaintiff's residence in New York County.

Dated:    June 5, 2019
       New York, New York

                **LEE LITIGATION GROUP, PLLC**

           By:  */s/ C.K. Lee*_____
                C.K. Lee, Esq.
                Anne Seelig, Esq.
                148 W. 24th Street, 8th Floor
                New York, NY 10011
                *Attorneys for Plaintiff*

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**SUPREME COURT OF THE STATE OF NEW YORK**
**NEW YORK COUNTY**

---

DAVID DICARLO,

     Plaintiff,

        -against-


FLUSHING FINANCIAL CORPORATION,

     Defendant.

Case No.:

---

Plaintiff, DAVID DICARLO (hereinafter "Plaintiff"), on behalf of himself and all others similarly situated, by and through her undersigned attorney, hereby files this Class Action Complaint against Defendant FLUSHING FINANCIAL CORPORATION (hereinafter "Defendant"), and states as follows:

<u>**INTRODUCTION**</u>

    1.    This class action seeks to put an end to systemic civil rights violations committed by Defendant against the blind in New York State. Defendant is denying blind individuals throughout the United States equal access to the goods and services Defendant provides to its non-disabled customers through www. flushingbank.com (hereinafter the "Website"). The Website provides to the public a wide array of the goods, services, and other opportunities offered by Defendant. Yet, the Website contains access barriers that make it difficult, if not impossible,

for blind customers to use the Website. Defendant thus excludes the blind from the full and equal participation in the growing Internet economy that is a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind people to fully and independently access a variety of services, including shopping,   purchasing products, and opening checking accounts online.

2.      Plaintiff is a blind individual. He brings this civil rights class action against Defendant for failing to design, construct, maintain, and/or own a website that is fully accessible to, and independently usable by, blind people.

3.      Specifically, the Website has many access barriers preventing blind people from independently navigating, browsing, and  opening checking accounts on the Website using assistive computer technology.

4.      Plaintiff uses the terms "blind person" or "blind people" and "the blind" to refer to all persons with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20/200. Some blind people who meet this definition have limited vision. Others have no vision.

5.      Approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.[1] There are approximately 400,000 visually impaired persons in New York State.[2]

6.      Many blind people enjoy using the Internet just as sighted people do. The lack of an accessible website means that blind people are excluded from the opportunity to opening

---

[1] Americans with Disabilities: 2010 Report, U.S. Census Bureau Reports
[2] American Foundation for the Blind, State-Specific Statistical Information, January 2015

2

Case 1:19-cv-05775-JGK    Document 1    Filed 06/20/19    Page 8 of 31

checking accounts and from independently navigating and using the Website.

7.      Despite readily available accessible technology, such as the technology in use at other heavily trafficked websites, which makes use of alternative text, accessible forms, descriptive links, and resizable text, and limits the usage of tables and JavaScript, Defendant has chosen to rely on a predominantly visual interface. Defendant's sighted customers can independently browse and purchase products without the assistance of others. However, blind people must rely on sighted companions to assist them in browsing and  opening checking accounts on the Website.

8.      By failing to make the Website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

9.      Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the Americans with Disabilities Act. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York state law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

10.      Plaintiff attempted to browse and purchase goods on the Website most recently in May 2019. However, unless Defendant remedies the numerous access barriers on the Website, Plaintiff and Class members will continue to be unable to independently navigate, browse, and use the Website.

11.      This Complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal and state law, to include monitoring of such measures, and to update and remove accessibility barriers on

the Website so that Plaintiff and the proposed Class and Subclass of customers who are blind will be able to independently and privately use the Website. This Complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

12.     This is an action for declaratory and injunctive relief brought pursuant to the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL") and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 et seq. ("NYC HRL" or "City law"). The Court has power to issue such relief pursuant to N.Y. C.P.L.R. § 6301.

13.     The Court has subject matter jurisdiction over the action over the NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1367. The Court also has supplemental jurisdiction over the federal claims because such claims are derived from a common nucleus of operative facts and assertion of supplemental jurisdiction by the Court is appropriate.

14.     Venue is proper pursuant to N.Y. C.P.L.R. § 503(a) based on the residence of Plaintiff. Defendant is registered to do business in New York State and has been doing business in New York State. The Defendant's headquarter is also located in New York State. Defendant is subject to personal jurisdiction in in this State. Defendant also has been and is committing the acts alleged herein New York State, has been and is violating the rights of consumers in New York State, and has been and is causing injury to consumers in New York State. A substantial part of the acts and omissions giving rise to Plaintiff's claims have occurred in New York State. Specifically, Plaintiff attempted to open a checking account on the Website.

4

## PARTIES

15.    Plaintiff is and has been at all times material hereto a resident of New York County, New York.

16.    Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR § 36.101 *et seq.,* the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff cannot use a computer or read website content without the aid of screen reader software. Plaintiff has been denied the full enjoyment of the facilities, goods, and services of the Website, as a result of accessibility barriers on the Website. Most recently in May 2019, Plaintiff attempted to open a check account on the Website but could not do so due to the inaccessibility of the Website. The inaccessibility of the Website has deterred him and Class members from enjoying the goods and services of Defendant.

17.    Defendant is a New York limited liability company with a principal office and mailing address at c/o THE CORPORATION TRUST COMPANY, CORPORATION TRUST CENTER 1209 ORANGE ST, WILMINGTON, DE 19801.

18.    Defendants own the Website, which is a place of public accommodation located throughout the United States, including New York State. Among other things, the Website provides access to a wide array of goods and services offered to the public, such as credit card, online banking, and financial planning services.  The inaccessibility of the Website has deterred Plaintiff from open a checking account.

19.    Plaintiff, on behalf of himself and others similarly situated, seeks full and equal access to the services provided by Defendant through the Website.

Case 1:19-cv-05775-JGK    Document 1    Filed 06/20/19    Page 11 of 31

## **CLASS ACTION ALLEGATIONS**

20.     Plaintiff, on behalf of himself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by Defendant, during the relevant statutory period."

21.     Plaintiff seeks certification of the following New York subclass pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all legally blind individuals in New York State who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by Defendant, during the relevant statutory period."

22.     There are approximately 400,000 visually impaired persons in New York State. There are approximately 8.1 million people in the United States who are visually impaired. Thus, the persons in the Class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

23.     This case arises out of Defendant's policy and practice of maintaining and/or owning an inaccessible website that denies blind and visually impaired persons access to goods and services of the Website. Due to Defendant's policy and practice of failing to remove access barriers, blind and visually impaired persons have been and are being denied full and equal access to independently browse the Website and the goods and services offered.

24.     There are common questions of law and fact common to the Class, including without limitation, the following:

    a.     Whether the Website is a "public accommodation" under the ADA;

Case 1:19-cv-05775-JGK    Document 1    Filed 06/20/19    Page 12 of 31

b.    Whether the Website is a "place or provider of public accommodation" under the laws of New York;

c.    Whether Defendant through the Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the ADA; and

d.    Whether Defendant through the Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the laws of New York.

25.    The claims of the named Plaintiff are typical of those of the Class. The Class, similar to the Plaintiff, are severely visually impaired or otherwise blind, and claim that Defendant has violated the ADA and/or the laws of New York by failing to update or remove access barriers on the Website, so it can be independently accessible to the Class of people who are legally blind.

26.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

27.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

7

28. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

29. References to Plaintiff shall be deemed to include the named Plaintiff and each member of the Class, unless otherwise indicated.

## FACTUAL ALLEGATIONS

30. Defendant owns and/or maintains the Website, which provides goods and services to millions of customers throughout the United States, including New York State.

31. The Website is a service and benefit offered by Defendant throughout the United States, including New York State. The Website is owned, controlled, and/or maintained by Defendant.

32. Among the features made available by Defendant on the Website are the following:

   (a)    the ability to open checking accounts;

   (b)    the ability to access news;

   (c)    the ability to sign up for an email newsletter;

   (d)    related goods and services;

   (e)    information about Defendant' social networks; and

   (f)    other information about Defendant.

33. This case arises out of Defendant's policy and practice of denying the blind access to the Website, including the goods and services offered. Due to Defendant's failure and refusal to remove access barriers to the Website, blind individuals have been and are being denied equal access to the Website, as well as to the numerous goods, services, and benefits offered to the public.

34.     Defendant denies the blind access to goods, services, and information made available through the Website by preventing them from freely navigating the Website.

35.     The Internet has become a significant source of information for conducting business and for doing everyday activities such as shopping, banking, etc., for sighted and blind persons.

36.     The blind access websites by using keyboards in conjunction with screen-reading software, which vocalizes visual information on a computer screen. Apart from blind persons whose residual vision is sufficient to use magnification, screen access software provides the only method by which blind persons can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products, and services contained therein.

37.     There are well-established guidelines for making websites accessible to blind people. These guidelines have been in place for at least several years and have been followed successfully by other large business entities in making their websites accessible. The Web Accessibility Initiative ("WAI"), a project of the World Wide Web Consortium which is the leading standards organization of the Web, has developed guidelines for website accessibility, called the Web Content Accessibility Guidelines ("WCAG") 2.1. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including, but not limited to: ensuring that all functions can be performed using a keyboard and not just a mouse; using descriptive links;and accessible forms. Without these very basic components, a website will be inaccessible to a blind person using screen reader technology.

9

38.     The Website contains access barriers that prevent free and full use by Plaintiff and other blind persons using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: the denial of keyboard access to key functions; the requirement that transactions be performed solely with a mouse; and the lack of a visible keyboard focus indicator.

39.     The Website contains essential functions required for opening a checking account that cannot be completed using a keyboard. According to WCAG 2.1 Guideline 2.1.1, for a website to be accessible, users must be able to interact with web pages and access all functions and capabilities of the website using only a keyboard. Plaintiff cannot use a computer mouse because moving a mouse pointer from one spot to another on a computer screen is a visual activity. However, the Website requires the use of a mouse to select essential content. Plaintiff was trying to open a checking account on the Website but he could not choose a state on the drop down menu that was required by the Website to opening an account. Plaintiff tried several times but failed. Due to the Website's deficient design and coding, Plaintiff is barred from accessing essential content and capabilities on the Website required for making a payment.

40.     As a result of the foregoing violations, Plaintiff is unable to pay his bill on the Website. The barriers to accessibility make it unreasonably cumbersome, confusing, and time-consuming for blind users to navigate the Website. The Website discriminates against persons with disabilities by failing to provide the same access, benefits, services to blind customers as are provided to sighted customers.

41.     The Website thus contains access barriers which deny full and equal access to Plaintiff, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of the Website.

Case 1:19-cv-05775-JGK   Document 1   Filed 06/20/19   Page 16 of 31

42.     The Website is a public accommodation maintained by Defendant to ease the process and reduce the costs, because by offering online service, a physical location is not required to operate and customers can have goods delivered directly to their address instead. Members of the Class are entitled to the full advantages and privileges of this service. It would not be an undue burden for Defendants to make the Website accessible.

43.     Plaintiff made several attempts to make a payment in April 2019, but was unable to do so independently because of the many access barriers on the Website. These access barriers have caused the Website to be inaccessible to, and not independently usable by, blind and visually impaired individuals.

44.     As described above, Defendant has actual knowledge of the fact that its Website contains access barriers causing it to be inaccessible, and not independently usable by, blind and visually impaired individuals.

45.     After Defendant removes the barriers on the Website to make it accessible to visually impaired users, Plaintiff intends open a checking account on the Website.

46.     These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits, and services of the Website and Defendant.

47.     Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a)     constructing and maintaining a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b)     constructing and maintaining a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c)     failing to take actions to correct these access barriers in the face of substantial

harm and discrimination to blind class members.

48.    Defendant utilizes standards, criteria, or methods of administration that have the

effect of discriminating or perpetuating the discrimination of others.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

(Violation of 42 U.S.C. § 12181, *et seq.* — Title III of the Americans with Disabilities Act)
(on behalf of Plaintiff and the Class)

49.    Plaintiff realleges and incorporates by reference the foregoing allegations as set

forth fully herein.

50.    Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a),

provides that "No individual shall be discriminated against on the basis of disability in the full and

equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of

any place of public accommodation by any person who owns, leases (or leases to), or operates a

place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or

criteria or methods of administration that have the effect of discriminating on the basis of

disability." 42 U.S.C. § 12181(b)(2)(D)(I).

51.    The Website is a public accommodation within the definition of N.Y.C.

Administrative Code § 8-102(9).

52.    Defendant is subject to Title III of the ADA because it owns and/or maintains the

Website.

53.    Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I) it is unlawful

discrimination to deny individuals with disabilities or a class of individuals with disabilities the

opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages,

or accommodations of an entity.

54.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations, which is equal to the opportunities afforded to other individuals.

55.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."

56.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

57.     There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their websites accessible, including but not limited to ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

13

58.     The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, and the regulations promulgated thereunder. Patrons of Defendant who are blind have been denied full and equal access to the Website, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

59.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

60.     As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities of the Website in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* and/or its implementing regulations.

61.     Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the proposed Class and Subclass will continue to suffer irreparable harm.

62.     The actions of Defendant were and are in violation of the ADA and therefore Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

63.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

64.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

(Violation of New York State Human Rights Law, N.Y. Exec. Law,

Article 15 (Executive Law § 292 *et seq.*)

(on behalf of Plaintiff and New York subclass)

65.     Plaintiff realleges and incorporates by reference the foregoing allegations as set forth fully herein.

66.     N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

67.     The Website is a public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9). The Website is a service, privilege or advantage of Defendant.

68.     Defendant is subject to New York Human Rights Law because it owns and maintains the Website. Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

69.     Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to the Website, causing the Website and the services to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.

70.     Specifically, under N.Y. Exec. Law § 296(2)(c)(I), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges,

advantages or accommodations."

71.    In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

72.    There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their websites accessible, including but not limited to ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

73.    Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(2) in that Defendant has:

(a)    constructed and/or maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b)    constructed and/or maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c)    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

74.    Defendant has failed to take any prompt and equitable steps to remedy its

Case 1:19-cv-05775-JGK   Document 1   Filed 06/20/19   Page 22 of 31

discriminatory conduct. These violations are ongoing.

75.    As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the subclass will continue to suffer irreparable harm.

76.    The actions of Defendant were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

77.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exc. Law § 297(4)(c) *et seq.* for each and every offense.

78.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

79.    Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

<u>**THIRD CAUSE OF ACTION**</u>

(Violation of New York State Civil Rights Law, NY CLS Civ R,
Article 4 (CLS Civ R § 40 *et seq*.)
(on behalf of Plaintiff and New York subclass)

80.    Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

81.    Plaintiff realleges and incorporates by reference the foregoing allegations as set forth fully herein.

82.    N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of

this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

83.     N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or his civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

84.     Defendant is subject to New York Civil Rights Law because it owns and/or maintains the Website. Defendant is a person within the meaning of N.Y. Civil Rights Law § 40-c(2).

85.     Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to the Website, causing the Website to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.

86.     There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making the Website accessible, including but not limited to: ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's

business nor result in an undue burden to Defendant.

87.     In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . . ."

88.     Specifically, under N.Y. Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside . . . ."

89.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

90.     As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class on the basis of disability who are being directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities, and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

91.     Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Law § 40 *et seq.* for each and every offense.

Case 1:19-cv-05775-JGK    Document 1    Filed 06/20/19    Page 25 of 31

## FOURTH CAUSE OF ACTION

(Violation of New York City Human Rights Law,
N.Y.C. Administrative Code § 8-102, *et seq.*)
(on behalf of Plaintiff and New York subclass)

92.     Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

93.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation . . . [b]ecause of any person's . . . disability . . . directly or indirectly . . . [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

94.     The Website is a public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

95.     Defendant is subject to City Law because it owns and/or maintains the Website. Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102.

96.     Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to the Website, causing the Website and the services integrated therein to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant make available to the non-disabled public. Specifically, Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . it is an unlawful discriminatory practice for any person prohibited by the provisions of [§ 8-107] from discriminating on the basis of disability not to provide

a reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Administrative Code § 8-107(15)(a).

97.    Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

   (a) constructed and/or maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

   (b) constructed and/or maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

   (c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

98.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

99.    As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed Class and Subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities of the Website under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the subclass will continue to suffer irreparable harm.

100.    The actions of Defendant were and are in violation of City Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

101.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and

fines under N.Y.C. Administrative Code §§ 8-120(a)(8) and 8-126(a) for each offense.

102.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

103.     Pursuant to N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION

(Declaratory Relief)
(on behalf of Plaintiff and the Class)

104.     Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

105.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the goods, services and facilities of the Website, which Defendant owns, maintains, and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Administrative Code § 8-107, *et seq.* prohibiting discrimination against the blind.

106.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

107.    A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

108.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

109.    A declaration that Defendant own and/or maintains the Website in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

110.    An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

111.    Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed subclass for violations of their civil rights under New York State Human Rights Law and City Law;

112.    Plaintiff's reasonable attorneys' fees, statutory damages, expenses, and costs of suit as provided by state and federal law;

113.    For pre- and post-judgment interest to the extent permitted by law; and

114.    Such other and further relief as the Court deems just and proper.

DATED: June 5, 2019

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181


By: _/s/ C.K. Lee_____
       C.K. Lee, Esq.

**Hassan, Amina**

---

| | |
|---|---|
| **From:** | Hassan, Amina |
| **Sent:** | Monday, June 17, 2019 5:43 PM |
| **To:** | 'CK Lee' |
| **Cc:** | Anne Seelig; Chelsea Akwei |
| **Subject:** | RE: DiCarlo v Flushing Financial Corp. |

Mr. Lee, I have been authorized to accept service of the complaint on behalf of my client.

Amina

---

**From:** CK Lee <cklee@leelitigation.com>
**Sent:** Wednesday, June 12, 2019 10:28 PM
**To:** Hassan, Amina <amina.hassan@hugheshubbard.com>
**Cc:** Anne Seelig <anne@leelitigation.com>; Chelsea Akwei <chelsea@leelitigation.com>
**Subject:** Re: DiCarlo v Flushing Financial Corp.

thank you

CK Lee
Lee Litigation Group, PLLC
148 West 24th Street, 8th Floor
New York, NY 10011
cklee@leelitigation.com
Main: (212) 465-1180
Direct: (212) 465-1188
Fax: (212) 465-1181

*Please note our new office address.*

**From:** Hassan, Amina <amina.hassan@hugheshubbard.com>
**Sent:** Wednesday, June 12, 2019 12:23 PM
**To:** CK Lee
**Cc:** Anne Seelig
**Subject:** DiCarlo v Flushing Financial Corp.

Hi Mr. Lee –

Thank you for the call this morning.  I am following up with my client, Flushing Financial Corporation, to see whether I can accept service on its behalf.

Regards,
Amina

**Amina Hassan** | Associate

**Hughes Hubbard & Reed LLP**
One Battery Park Plaza, 11th floor | New York, NY 10004-1482
Office +1 (212) 837-6793 | Cell +1 (917) 331-7043 | Fax +1 (212) 299-6793
amina.hassan@hugheshubbard.com | bio

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.